Use of Force/Taser Policies:

**22.0    USE OF FORCE** *(Amended September 24, 2003)*
The use of force by a police officer in the performance of his or her duty, especially the use of deadly physical force, has traditionally been one of the most controversial aspects of police work. National and statewide attention has again recently focused on the issues of Police use of force and abuse of force. It is incumbent upon all professional Police Officers and agencies to have a clear understanding of the permissible use of force by officers in the performance of their duties.

22.1 Policy *(Amended September 24, 2003)*

Law enforcement officers are authorized to use force in pursuit of legitimate law enforcement objectives. Those objectives include making lawful stops and arrests, and defending themselves and others.

It is the policy of the Charleston Police Department that its officers use only the amount of force that is objectively reasonable to achieve legitimate law enforcement objectives. Excessive or unreasonable force shall not be used. Any force used must be consistent with federal and State laws, city ordinances, and the policies and procedures of the Department.

When police officers are confronted with situations where it is objectively reasonable to use force to achieve a legitimate law enforcement objective, they should use only the force that is objectively reasonable. It is important to note that an officer need not attempt to begin using force at the lowest level of force on the continuum, when reason dictates and the officer can articulate that a higher level of force is reasonable. Likewise, the skipping of steps may be appropriate given the resistance encountered. Simply put, this continuum should be viewed as a ladder—an officer may go directly to any level or "rung" of the continuum provided that the force selected is objectively reasonable.

22.2    Definitions *(Amended September 24, 2003)*
- Deadly Force: Any use of force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury.
- Non-Deadly Force: Any use of force that is not deadly force.
- Objectively Reasonable: Reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene in light of the facts and circumstances confronting the officer without regard to the officer's underlying intent or motivation.
- Reportable Force: Any physical contact beyond unresisted handcuffing or escorting.
- Serious Use of Force: Lethal and less-than-lethal actions by officers including:
  o All firearm discharges by a Member with the exception of range and training incidents,
  o All uses of force by an officer resulting in a serious injury such as a broken bone or an injury requiring hospitalization,
  o All head strikes with an impact weapon,
  o All uses of force by an officer resulting in loss of consciousness, or that create a substantial risk of death, serious disfigurement, disability or impairment of the functioning of any body part or organ,
  o All other uses of force by an officer resulting in a death, and,

1

- o All incidents where a person receives a bite or other injury from a Department canine.
- Use of Force Continuum: A training model/philosophy that supports the progressive and reasonable escalation and de-escalation of Member-applied force in proportional response to the actions and level of resistance offered by a subject. The level of response is based upon the situation encountered at the scene and the actions of the subject in response to the Member's commands. Such response may progress from the Member's actual physical presence at the scene to the application of deadly force.
- Member: Any officer of the Charleston Police Department who has taken the Oath of Office and who possesses police powers.

22.3 Appropriate and Authorized Degrees of Force *(Amended September 24, 2003)*

22.3.1 Verbal Persuasion as a Means of Effecting Custody *(Amended September 24, 2003)*

The practice of courtesy in all public contact encourages understanding and cooperation; lack of courtesy arouses resentment and often-physical resistance. Simple directions, which are complied with while you merely accompany the subject, are by far the most desirable method of dealing with an arrest situation. Custody may be achieved through advice, persuasion and warnings before resorting to actual physical force.

The above should not be construed to suggest that you should ever relax and lose control of a situation, thus endangering your personal safety or the safety of others. Officers are permitted to use that force which is objectively reasonable.

22.3.2 Non-Deadly Force *(Amended September 24, 2003)*

Officers are authorized to use department-approved, non-deadly force techniques and issued equipment to;
- protect the officer or others from physical harm,
- effect a lawful stop and arrest and/or,
- prevent a person from injuring himself/herself.

22.3.3 Deadly Force *(Amended September 24, 2003)*

Officers are authorized to use deadly force when;
- in defense of him/herself or others from an objectively reasonable belief of an immediate threat of death or serious bodily injury,
- officers should be aware of the effects and that it may become objectively reasonable to protect him/herself from the use or threatened use of OC spray when he/she has an objectively reasonable belief that deadly force will be used against him/her if he/she becomes incapacitated,
- preventing the escape of a fleeing felon whom the officer has an objectively reasonable belief poses an immediate threat of death or serious physical injury to the officer or others. Where practicable prior to discharge of the firearm, officers shall identify themselves as law enforcement officers and state their intent to shoot.
- Officers may use deadly force to destroy an animal that represents a threat to public safety, or as a humanitarian measure where the animal is seriously injured when the officer reasonably believes that deadly force can be used without harm to the officer or others.

22.3.4 Unnecessary Force *(Amended September 24, 2003)*

Unnecessary force occurs when it is apparent that the type or degree of force employed was not objectively reasonable. When any degree of force is utilized as summary punishment or for vengeance, it is clearly improper and unlawful.

Any officer who witnesses unnecessary force used by another officer will intervene and report this unnecessary force to his/her supervisor.

When the use of force is applied indiscriminately, the officer will be exposed to civil and criminal liability and Department disciplinary action.

Justification for the use of force is limited to what is reasonably known or perceived by the officer at the time. Facts discovered after the event, no matter how compelling, cannot be considered in determining whether the force was justified.

22.3.5 Use of Chemical Agent (Oleoresin Capsicum) *(Amended September 24, 2003)*

The use of OC Spray constitutes a non-deadly use of force. Oleoresin Capsicum is an inflammatory agent and is naturally derived from oils and resins of the cayenne pepper plant. OC is considered a less-than-lethal weapon system that causes an intense burning sensation of the skin and mucous membranes.

OC Spray has a near-immediate effect on the individual sprayed. Once sprayed, an individual's eyes will reflexively close because of the burning, tearing and swelling of the eyes due to dilation of the capillaries. The subject usually becomes disoriented and is likely to lose their balance. When inhaled, the respiratory tract is inflamed, resulting in a swelling of the mucous membranes lining the breathing passages and temporarily restricting breathing to short, shallow breaths. The subject may experience choking, gagging or gasping for breath. Other effects include burning sensation of the skin. While temporary incapacitation occurs rapidly, the effects of OC Spray subside after about 30 minutes.

Because of its debilitating effects, officers should never spray OC into the wind where they could be sprayed by blowback.

Because of OC's effects on their respiratory systems and their susceptibility to breathing difficulties, care should be taken to ensure infants, children and the elderly are not sprayed.

22.3.5.1    Officer's Responsibilities When Utilizing OC Spray *(Amended September 24, 2003)*
First aid care and decontamination of subjects sprayed by OC;

- Before attempting to administer any first aid assistance or initiating decontamination to a subject sprayed with OC who is to be arrested or taken into custody, officers will ensure that the subject is safely secured by use of handcuffs.
- If the sprayed subject is lying on their stomach, immediately after handcuffing turn them on their side or place them in a seated position, whichever facilitates ease of breathing for them.
- If the struggle continues after they have been restrained, **do not sit or kneel on their back.** Hold their legs down or secure them with ankle restraints. DO NOT tie the handcuffs to any leg or ankle restraints.
- Calm the subject down; reassure him/her that the effects of the spray are temporary.
- Expose the subject to fresh air and if available at the scene of the arrest, flush the contaminated area with large amounts of water.
- **Do not lay the subject on their stomach during transport. Attempt to always transport them in a seated position.**
- Monitor the subject at the scene, during transportation and while in the booking office for any sign of respiratory distress.
- If a struggle occurred during the arrest of the subject, officers should be even more cautious if they suspect the subject has used drugs or alcohol or if the subject has displayed any psychological problems.
- If needed, get the subject immediate medical attention.
- Once at the booking office, have the subject wash the contaminated area with soap and water to remove any resin remaining on the skin and continue to flush their eyes and/or contaminated areas with water until the effects of the OC Spray have subsided, prior to any booking.
- If the effects of the OC Spray do not subside within a reasonable amount of time (approximately 30 minutes) or if the subject becomes unconscious or unresponsive, arrange for the immediate transportation of the subject to a hospital. **The subject should be transported lying on his/her side.** Make sure that hospital personnel are made aware of the OC contamination in addition to any other injuries.
- **Subjects wearing contact lenses should remove and properly wash them. Serious or permanent eye damage can result if contacts are not removed within four to six hours after exposure. Do not replace contact lenses back into the eyes until they have been properly cleaned.**
- To decontaminate premises indoors, ventilate by opening doors and windows. OC Spray should dissipate in about one hour.

3

- Use of OC Spray and subsequent first aid administered to the subject must be reported in a CPD "Use of Force Report."

22.3.6 Use of Firearms *(Amended September 24, 2003)*
- An officer may discharge a firearm under the following circumstances:
  - At an approved range,
  - When killing seriously wounded or dangerous animals when other disposition is impractical,
  - When it is objectively reasonable in the defense of an officer's own life or when other reasonable means have failed or would be clearly ineffective,
  - When objectively reasonable in the defense of another person's life or when other reasonable means have failed or would be clearly ineffective,
  - preventing the escape of a fleeing felon whom the officer has an objectively reasonable belief poses an immediate threat of death or serious physical injury to the officer or others. Where practicable prior to discharge of the firearm, officers shall identify themselves as law enforcement officers and state their intent to shoot.
  - In all cases where firearms are discharged, officers must make every effort to ensure that innocent persons are not harmed.
- An officer shall not discharge a firearm under the following circumstances:
  - As a warning,
  - Into a crowd,
  - At persons accused/suspected of committing misdemeanors,
  - Solely to protect property interests,
  - To stop an individual on mere suspicion of a crime simply because the individual runs away,
  - At or from a moving vehicle, absent exigent circumstances which prevent an officer from removing him/herself from the path of the vehicle.

22.3.7 Use of X26 Taser Electro-Muscular Disruption Weapon *(Amended November 22, 2009)*

The use of the X26 Taser Electro-Muscular Disruption Weapon is considered a non-deadly use of force.

The X26 Taser is deployed as an additional tool and is not intended to replace firearms. The X26 Taser may be used to control dangerous or violent subjects when deadly physical force does not appear to be justified and/or necessary or other attempts to subdue the subject by other conventional tactics have been, or likely will be, ineffective in the situation, or there is reasonable expectation that it will be unsafe for officers to approach within contact range of the subject.

The X26 Taser fires two probes up to a distance of 21 feet from a replaceable cartridge. These probes are connected to the weapon by high voltage insulated wire. When probes make contact with the target, the X26 Taser transmits powerful electrical pulses along the wires and into the target through up to two inches of clothing. The pulses send 26-watt electrical signals to temporarily override the central nervous system and directly control the skeletal muscles. This causes an uncontrollable contraction of the muscle tissue, allowing the X26 Taser to cause temporary physical debilitation to a person, regardless of pain tolerance or mental focus. The X26 Taser may also be used in a "touch" or "drive" stun mode using a spent cartridge or no cartridge on the front of the Taser gun, to make physical contact with a subject and deliver energy.

The X26 Taser shall be issued to and used only by officers who have completed the X26 Taser training program.

All uses of the X26 Taser must be reported in a CPD "Use of Force Report."
In addition to the above, the following directives and considerations must also be adhered to;
- Officers carrying the X26 Taser shall carry the device in an issued holster on their weak side.
- Officers carrying the X26 Taser on duty are responsible for ensuring the device is charged and all components are fully operational.
- The X26 Taser can be used at a distance up to 21 feet, however, the optimum distance is 7-15 feet. The device is equipped with both laser and fixed sight.

4

- When feasible, before discharging the X26 Taser, officers should make every reasonable effort to inform other officers involved in the incident that a less than lethal weapon is being discharged by using the code word "TASER."
- The X26 Taser should not be deliberately aimed at the face, neck or groin area.
- The X26 Taser should be aimed at the lower torso and not deliberately aimed at the center mass of the chest.
- The X26 Taser should not be utilized on elderly subjects, young children or females who the officer knows or has reason to believe is pregnant if other practical alternatives are available to the officer under the circumstances.
- The X26 Taser may be deployed multiple times on the same subject if the officer has an objectively reasonable belief the use is necessary to take the suspect into custody.
- The X26 Taser has the ability to ignite flammable liquids. The device is not to be discharged at subjects who have come into contact with flammable liquids or in environments where flammable liquids are obviously present.
- Consideration should be given and care taken in situations where the targeted subject is likely to experience a fall from an elevated position.

22.3.7.1 <u>Officer's Responsibility When Utilizing X26 Taser Electro Muscular Disruption Weapon</u> *(Added August 24, 2004)*

Medical Attention

Upon deployment of the X26 Taser, the appropriate medical attention shall be immediately provided to the subject at the scene, if necessary, with follow up medical treatment at an appropriate medical facility. In the event the probes strike a sensitive region of the body (eyes, head, genitals, or female breasts), such transportation to a medical facility shall be provided by ambulance.

Removal of Probes

After securing the subject in handcuffs and/or other appropriate restraints, an officer will remove the probes using prescribed methods. However, if the probes are in areas such as face, neck or groin, the officer shall require the subject to be treated at a hospital and the probes removed only by medical personnel.

Officers shall wear latex gloves, place hand above the probes and stretch the skin taut, using a brisk pull, the officer shall pull the probe out of the subject. The puncture site shall be wiped with a sterile alcohol swab and an adhesive bandage applied to the site.

Alcohol swabs, gloves and bandage packaging shall be disposed of in a biohazard bag or receptacle.

Reporting, Investigation of X26 Taser Deployment

Each X26 Taser has a data port that stores the date, time and duration of each firing of the weapon. The Professional Standards Division will maintain the computer interface necessary to download the stored data on department issued X26 Tasers and will maintain files on all Taser uses and downloads.

Each discharge including accidental discharges, of an X26 Taser shall be investigated and documented.

Each discharge of an X26 Taser on a subject shall be documented in a CPD "Use of Force Report" and a "Taser Use Report." A supervisor shall be notified as soon as practical.

The expended Taser cartridge, probes and anti-felon identification tags (AFIT) will be collected as evidence and shall be treated as a biohazard. The probes may be safely contained by inverting them, placing them into the cartridge and taping them in place. The expended cartridge, probes and anti-felon identification tags are then to be submitted to the Property and Evidence Section.

22.4   Use of Force Options and Continuum *(Amended August 24, 2004)*

A Use of Force Continuum is progression of force options available to an officer to control a situation. The control/force options available to Charleston Police Officers are as follows:

- LEVEL 1   Officer Presence, verbal direction and/or escort.

5

- LEVEL 2    Soft empty hand controlling techniques, such as; transport wrist lock, straight armbar takedown, inside take down or pressure points, as reasonably needed.
- LEVEL 3    Issued OC Spray, issued X26 Taser and/or Hard Empty Hand Controlling Techniques that have a higher probability of injury, such as; pain compliance holds, kicks, knee strikes, punches/strikes, defensive counter strikes and/or shoulder pin restraint.
- LEVEL 4    Impact weapons, including batons, ASP, and night sticks. These weapons can be used as soft intermediate weapons (joint locks or come-alongs using the impact weapon) or hard intermediate weapons (impact weapon strikes, striking and/or blocking techniques). A canine may be used subject to the CPD Canine Policy (Section 31 of this manual).
- LEVEL 5    Deadly force

It is expected that an officer will almost always first try to establish and maintain control of a subject or situation through use of presence and verbal dialogue or commands before progressing to use of higher levels of force. However, **it is permissible for an officer to escalate quickly through the force options or skip steps, depending on a tactical evaluation of the situation.** In other words, this continuum can be viewed as a ladder, and an officer may go directly to any level or "rung" of force on the continuum, providing that the force option(s) selected is objectively reasonable.

An officer also has the option to disengage from physical contact with the subject, de-escalate and/or escalate to a higher level in the Use of Force Continuum in order to employ the proper level of force as the encounter continues. An officer may decide to disengage either temporarily or entirely, depending on the circumstances. In fact, it may sometimes be necessary to disengage in order to escalate and gain control.

Also, keep in mind that proper police action need not always consist of some form of physical engagement, even if the subject's actions would justify it. OFFICER SAFETY IS ALWAYS A KEY PRIORITY. Use of movement, cover and concealment are keys to officer safety during confrontations or potential confrontations – particularly those in which a subject has or may have a firearm or other potentially dangerous weapon.

Once custody of a subject or subjects has been established, an officer should de-escalate to a force level sufficient to maintain that custody. Once custody is achieved, an officer has a responsibility to ensure the safety of all persons involved in the encounter and to provide appropriate custodial care for any subject(s) involved in the incident.

Selection of an objectively reasonable force option under pressure is one of the most difficult aspects of a police officer's job. The Department and the law recognize that officers are expected to make split-second decisions in rapidly evolving circumstances and that the amount of time available to escalate and respond to a situation may impact on the officer's decision. The Department also recognizes that there is no one hard and fast formula or equation to determine objectively reasonable use of force. However, a graphic version of the Use of Force Continuum is included in this policy as a training tool to provide guidance to officers making use of force decisions. The continuum shows types of subject actions commonly encountered by Police, categorized as "Compliant/Cooperative", "Passive/Verbal Resistance", "Active Resistance", "Physical Resistance", and "Deadly Resistance", coupled with force level options.

While the Use of Force Continuum chart focuses on the subject's actions to select a force option, a number of other factors should be taken into consideration as a part of the "totality of the circumstances." These factors are not necessarily reflected in the chart but may legitimately affect the officer's selection of a force level option, either up or down the continuum. These Escalation/De-escalation factors include, but are not limited to:

- Officer/Subject Factors (relative age, size, strength or skill level, injury/exhaustion, number of officers versus number of subjects)
- Influence of drugs or alcohol
- Presence/proximity of weapons
- Other tactical factors (position of advantage, cover, time for decision)
- Availability of other options

In the final analysis, no graph or chart can substitute or eliminate the need for an officer's reasoned decision about the use of force based on training, experience, common sense and good judgment. Each officer has an individual legal responsibility to ensure that the force used is objectively reasonable and justified under current law and should act accordingly.

22.4.1 Use of Force Continuum Chart  *(Amended August 24, 2004)*

| USE OF FORCE CONTINUUM | | |
|---|---|---|
| **SUBJECT'S ACTION** | **OFFICER'S REACTION** | |
| **COMPLIANT/COOPERATIVE**<br>Subject is cooperative and complies with officer requests or commands. | *OFFICER PRESENCE, VERBAL DIRECTION AND/OR ESCORT*<br>Usually there are not many use of force concerns if a subject complies with the officer's commands. Routine arrest and handcuffing procedures are to be followed. | LEVEL 1 |
| **PASSIVE/VERBAL RESISTANCE**<br>Subject does not physically resist the officer but refuses to comply with the officer's verbal commands. | *SOFT EMPTY HAND CONTROL*<br>Once verbal techniques have been attempted and no voluntary compliance is forthcoming, the officer is authorized to use Soft Empty Hand Control Techniques that have a minimal probability of injury, such as; transport wrist lock, straight armbar takedown, inside take down or pressure points, as reasonably needed.<br><br>*USE OF FORCE REPORT REQUIRED* | LEVEL 2 |
| **ACTIVE RESISTANCE**<br>Subject is making physically evasive movements (e.g. bracing, tensing or moving away) to defeat the officer's attempt to control the subject <u>or</u> subject is verbally threatening to cause imminent physical harm to the officer or another <u>or</u> the subject verbally signals an intention not to be taken into or retained in custody, **provided the subject's intention to physically resist the officer is clear**. | *HARD EMPTY HAND CONTROL, OC SPRAY, TASER*<br>The officer is authorized to use the amount of force objectively reasonable to overcome this behavior by using department issued OC Spray, department issued X26 Taser and/or Hard Empty Hand Controlling Techniques that have a higher probability of injury, such as; pain compliance holds, kicks, knee strikes, punches/strikes, defensive counter strikes and/or shoulder pin restraint.<br><br>*USE OF FORCE REPORT REQUIRED* | LEVEL 3 |
| **PHYSICAL RESISTANCE**<br>Subject engages, or is about to engage, in behavior beyond active resistance, such as grabbing, pushing, punching, kicking, biting, throwing objects or any other behavior in which the officer, or another, becomes the object of the subject's resistance or aggression. | *AUTHORIZED IMPACT WEAPONS, DEPLOYMENT OF CANINE*<br>The officer is authorized to use the amount of force objectively reasonable to overcome this resistance or aggression by use of authorized impact weapons, including batons, ASP, and night sticks. These weapons can be used as soft intermediate weapons (joint locks or come alongs using the impact weapon) or hard intermediate weapons (impact weapon strikes, striking and/or blocking techniques). A canine may be used subject to the CPD Canine Policy (Section 31 of this manual).<br><br>*USE OF FORCE REPORT REQUIRED* | LEVEL 4 |
| **DEADLY RESISTANCE**<br>Subject engages or is about to engage in actions that the officer reasonably believes to be an immediate threat of death or serious bodily injury to the officer or another. This includes attempts to render the officer unconscious, grabbing for the officer's firearm, blows to vital organs, stabbing, shooting or any other action that would create a likelihood of causing the officer or another serious injury or death. | *FIREARMS, OTHER AUTHORIZED WEAPONS*<br>The officer is authorized to use the amount of force objectively reasonable to preserve the officer's or another's life or to prevent serious physical injury, up to and including force that would reasonably be expected to cause serious injury or death, such as; use of firearm, blows to the head using impact weapons, etc.<br><br>*USE OF FORCE REPORT REQUIRED* | LEVEL 5 |

22.5 <u>Injury or Complaint of Injury</u> *(Amended October 7, 2007)*

When an officer uses reportable force that results in an injury or complaint of injury to a person, *the officer* will ensure that an on duty supervisor from his/*her* assigned bureau (with the rank of Sergeant or higher *or* Corporal if he/she is acting as Sergeant for the date and time in question) is notified immediately. A supervisor must respond to the scene of the injured person (including injured officer) and investigate by conducting interviews of all officer and civilian witnesses and the subject, taking photographs or other electronic imaging of injuries or alleged injuries and whatever else the supervisor deems necessary to complete a thorough investigation. The on scene supervisor must notify the chief of police and professional standards of incident. The Chief and professional standards will evaluate to determine what further investigative actions are warranted based upon the severity of the injury and the nature of the reportable force.

- If an officer of the required rank is not on duty in the officer's assigned bureau, the Member will ensure that the Shift Commander on duty is notified.
- When an officer's use of force results in injury or complaint of injury, immediate steps will be taken to request medical attention by the first officer who becomes aware of such injury or complaint of injury.
- Anytime police officers use serious physical force or his/her action results in serious physical injury, the Criminal Investigation Commander and a Member of Professional Standards shall be notified as soon as possible and a Member of each unit will be required to respond to the scene.
- When the use of force requires that an Investigator from the Criminal Investigation Division respond to the scene, that Investigator will assume command of the investigation, consistent with investigative procedures and law specifically, but not limited to Section 20.0 Criminal Investigations, of this policy and procedures manual.
- The Member will document the incident in detail on the appropriate Departmental forms and submit the original to the responding supervisor. All Members witnessing or having knowledge regarding the incident will submit appropriate reports prior to going off duty.
- The supervisor shall submit a report to the Chief with a recommendation as to 1) whether the force used was within the policy, and, 2) whether the incident involves training or tactical issues.
- The Chief of Police will be notified and will review the reports will determine if further investigation or documentation is needed at that time.

22.6 <u>Auxiliary Weapons are Prohibited Unless Authorized by the Chief of Police</u> *(Amended September 24, 2003)*

Examples of auxiliary weapons are: a firearm carried in addition to the service pistol or its equivalent (unless previously authorized by the Chief of Police or his designee), sap gloves, claw handcuffs, fixed blade knives and/or folding blade knives with a blade length of more than five inches. Any weapon issued by the Department to aid in the performance of specific duties (i.e. shotguns and rifles) shall not be considered an auxiliary weapon for purposes of these provisions.

22.7 <u>Member Not to Surrender Weapon</u> *(Amended September 24, 2003)*

A Member of the Department may be at the mercy of an armed suspect who has an advantage, but experience has shown that the danger to a Member is not necessarily reduced by that Member giving up his/her firearm upon demand.

- Surrendering a firearm might mean giving away that Member's or another Member's only chance for survival.
- A Member of the Department should use every tactical tool available to avoid surrendering a firearm.

22.8 <u>Display of Weapon</u> *(Amended September 24, 2003)*

No provisions of this manual shall prevent the drawing or displaying of an authorized firearm during the course of an arrest or an investigation when it is objectively reasonable by the Member for the safety of that Member or of other persons. No firearms will be unnecessarily drawn or displayed nor shall they be handled in a careless manner. Members shall not draw, display, load, or unload a firearm except:

- Whenever objectively reasonable in the proper performance of their duties, or
- When so ordered by a superior officer.
- When directed to do so by an authorized Department Armorer or Range Officer.
- When loading or unloading any firearm, the officer shall direct the barrel of the weapon into a sand-filled safety barrel as a safety measure should the weapon discharge.

22.9 <u>Reporting</u> *(Amended April 6, 2008)*

8

A Use of Force Report (CPD 167) shall be completed when any reportable force is used or if one of the following conditions is met;
- Oleoresin Capsicum (OC, Cap-Stun) spray is used,
- X26 Taser is used,
- Pointing of a firearm directly at any person,
- Any discharge of a firearm, whether intentional or accidental, except when at an approved range or during approved training,
- The subject complains of abuse or excessive use of force (a PSD complaint will also be initiated),
- Reporting is required under the Canine Policy provisions in Section 31 of this policy and procedures manual.
- Any use of deadly force.
- The completed Use of Force Report (CPD 167) will immediately be sent to the Professional Standards Division along with any photographs and/or digital photographic camera cards associated with the CPD 167. The photographic material sent to PSD will be handled in accordance with section 20.2.5.2

22.10   Use of Force Review   *(Amended September 24, 2003)*

The Office of the Chief of Police will conduct an administrative review of each reportable use of force to ensure compliance with policy and existing law. This does not, however, preclude review of any matter by the Professional Standards Division for investigation of violation of policy and disciplinary recommendation.

The Office of the Chief of Police will evaluate this policy, training procedures and equipment issued to the officers annually to determine compliance with this policy and the law and make all necessary changes.